UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLO JEROME FELIX, JR.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>C. CAZORES, et al.,<br><br>　　　　Defendants. | Case No.: 1:24-cv-00332-JLT-SKO<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT CONCERNING EXHAUSTION**<br><br>(Doc. 26)<br><br>**14-DAY OBJECTION PERIOD** |

Plaintiff Tylo Jerome Felix, Jr., is proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's constitutional claims against Defendants Cazares, Smothermon, Diaz, Velasquez, and Arreazola.[1][2]

**I.      INTRODUCTION**

Defendants filed a motion for summary judgment on January 3, 2025, alleging Plaintiff failed to exhaust his administrative remedies before filing suit. (Doc. 26.) Plaintiff opposed (Doc. 29) and Defendants replied (Doc. 31). Following submission of Defendants' reply, Plaintiff filed a document titled "Response to Opposition Response" on February 14, 2025. (Doc. 33.)

---

[1] This action was severed from Plaintiff's original action titled *Felix v. Dougherty, et al.*, case number 1:21-cv-01472-JLT-SKO, on March 20, 2024. (*See* Doc. 1.)

[2] Defendants Cazares and Smothermon were erroneously sued as "C. Cazores" and "J. Smotherman," respectively. (*See* Doc. 2.) Their answer filed July 1, 2024, reflects the correct spelling of their surnames. (*See* Doc. 11.)

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff contends that on June 19, 2019, Defendant Cazores asked him to "turn around and cuff up" after he complained about "how hot it was inside [his] cell and asking why did officers destroy [his] property." (Doc. 2 at 7.) Plaintiff states he began to comply, believing he would be taken to the sergeant or lieutenant's office. (*Id*.) As Plaintiff turned to comply, Defendant Smotherman arrived to assist Cazores. (*Id*.) Plaintiff turned around and put his hands behind his back, but Cazores grabbed his head and slammed it into the rotunda wall. (*Id*.) When Plaintiff's knees started to buckle and he began to fall, both Cazores and Smotherman used their weight to hold Plaintiff down and began punching him in the back of the head. (*Id*.) Plaintiff sought to protect himself by covering his head and body in the fetal position. (*Id*.) Defendants Diaz and Velasquez arrived and Plaintiff felt "kicks and punches," weight on top of him, and the grabbing of "his hands and placing them behind his back." (*Id*.) Plaintiff contends the assault continued and he was repeatedly kicked in the head, face, and ribs by Defendant Velasquez. (*Id*.) Defendant Arreazola arrived and began kicking him. (*Id*.) When "the other officers began to stop," Defendant Diaz continued to kick Plaintiff in the back of the head and face, breaking one of his teeth. (*Id*.) Defendant Arreazola then ordered Diaz to stop "because the nurses were coming." (*Id*.) Plaintiff contends Diaz stripped him of his pants, partially removed his boxers, placed a spit mask over Plaintiff's face and shook him. (*Id*.)

Plaintiff contends Cazores, Smotherman, Diaz, Velasquez and Arreazola used excessive force in violation of Plaintiff's Eighth Amendment rights against cruel and unusual punishment. (Doc. 2 at 7.) He states he "was handcuffed and kicked in the face and head," causing an orbital fracture, "cracked tooth" and significant swelling of his face and head. (*Id*.) Plaintiff also suffered from a concussion and lacerations, abdominal trauma, pain, and "physiological trauma as well PTSD from this brutal beating." (*Id*. at 7-8.)

(*See* Doc. 6 at 3-4 [First Screening Order].)

## III. SUMMARY OF THE PARTIES' POSITIONS

***Defendants' Summary Judgment Motion re Exhaustion***

Defendants allege Plaintiff did not properly exhaust available administrative remedies regarding his claims against Defendants Arreazola, Cazares, Diaz, Smothermon, and Velasquez. Specifically, Defendants contend Plaintiff's relevant grievance was cancelled because he refused to be interviewed, and Plaintiff did not submit a separate grievance challenging the cancellation.

***Plaintiff's Opposition***

Plaintiff's opposition is quoted below in its entirety:

The plaintiff hereby declares that he opposes all allegations made by

2

> defendants. All defendants did in fact use excessive force with malice intentions of harming Tylo Felix Jr. by kicking him, punching him while cuffed. Plaintiff did suffer all injuries in the complaint and now has PTSD related to this incident. The plaintiff opposes that he did in fact exhaust his administrative [remedies]. The plaintiff did in fact file a timely civil 1983 action. The plaintiff opposes all the claims that defendants made that they used force in the frame of their job and that they can't be tried under color. The [plaintiff] opposes that this case be dismissed due to frivolous claim or any other reason.

(Doc. 29 [minor modifications made to capitalization & punctuation].)

### *Defendants' Reply*

Defendants contend Plaintiff failed to substantively address their motion and failed to controvert their evidence by providing any supporting arguments or evidence. Defendants contend that because Plaintiff failed to create a triable issue of fact, the Court should grant their motion for summary judgment.

### *Plaintiff's Surreply*

Plaintiff contends he exhausted his administrative remedies because his appeal concerned the "exceptional delay in review" of his grievance. He contends the appeal coordinator's finding that his appeal was duplicative was "unorthodox" because a grievant is permitted to "accept [exceptional delay in review] as a denial." Plaintiff asserts any error on Plaintiff's part was "harmless error" and he wants to "amend [his] error if it [prejudiced] the Defendants in any way." Plaintiff included his exceptional delay notices dated September 12, October 7, and November 8, 2019, copies of his grievance and appeal, and a copy of the Office of Appeal's November 18, 2019, letter, as exhibits to his filing.

The Local Rules for the Eastern District of California provide for a motion, an opposition, and a reply. *See* L.R. 230(*l*). Nothing in the Local Rules or the Federal Rules of Civil Procedure permits the filing of a surreply as a matter of right, and the Court generally views motions for leave to file a surreply with disfavor. *See Hill v. England*, No. CV-F-05-869-REC-TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citation omitted). However, district courts have the discretion to either permit or preclude a surreply. *See JG v. Douglas Cnty. School Dist.*, 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file a surreply where it did not consider new evidence in reply). The Court is mindful that, in this

3

1 Circuit, courts are required to afford pro se litigants additional leniency. *See, e.g.*, *Wilhelm v.
2 Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th
3 Cir. 2010)) (holding when plaintiff "is pro se, particularly in civil rights cases, [courts should]
4 construe the pleadings liberally and ... afford the [plaintiff] the benefit of any doubt").
5 Nonetheless, the leniency afforded pro se inmates need not extend to permitting surreplies "as a
6 matter of course," and the Court is not inclined to grant such leave absent a showing of good
7 cause. *See Garcia v. Biter*, 195 F. Supp. 3d 1131, 1134 (E.D. Cal. 2016) (denying motion for
8 leave to file surreply due to lack of good cause). "The purpose of a surreply is to afford 'the
9 nonmoving party ... an opportunity to respond to new material raised for the first time in the
10 movant's reply.'" *See, e.g.*, *United States v. Bruce*, No. 1:18-CR-00464-JCH, 2018 WL 3232353,
11 at *1 (D.N.M. July 2, 2018) (quoting *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir.
12 2005)); *Hill*, 2005 WL 3031136, at *1.

Plaintiff alleges that Defendants did not address the exceptional delay notices issued during the grievance process. (*See* Doc. 33 at 2 ["Your honor the Defendants has failed to put that CDCR SATF gave the Plaintiff three exceptional delay in review of appeal"] & 4 ["The Defendants has not said anything about the Exceptional Delay in Review"]. Plaintiff is mistaken. Defendants' motion (Doc. 26 at 12-14) and separate statement of undisputed facts (Doc. 26-1 at 4 [Nos. 13-15]) address exceptional delay notices. Further, in response to Plaintiff's opposition, Defendants did not assert any new arguments. Therefore, Plaintiff's surreply is improper. *Garcia*, 195 F. Supp. 3d at 1134; *Hill*, 2005 WL 3031136, at *1. The Court nonetheless considers below Plaintiff's response to the exceptional delay notices issued during the grievance process.

**IV.    APPLICABLE LEGAL STANDARDS**

    **A.  Summary Judgment**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment … is satisfied." *Id.* at 323.

### B. Exhaustion of Administrative Remedies

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).

The exhaustion requirement applies to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is an affirmative defense, which the defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant bears the burden of producing evidence that proves a failure to exhaust; and, summary judgment is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

On a motion for summary judgment, the defendant must prove (1) the existence of an available administrative remedy and (2) plaintiff failed to exhaust that remedy. *Albino,* 747 F.3d at 1172 (citation omitted). If defendant meets this burden, plaintiff "has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citation omitted). "However, … the ultimate burden of proof remains with the defendant." *Id.*

An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 578 U.S. 632, 642 (2016). An administrative remedy is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; or when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate [the mechanism]"; or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643-44.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), *overruled on other grounds* by *Albino*, 747 F.3d at 1168-69.

"If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge." *Albino*, 747 F.3d at 1170. If the court finds that remedies were not available, the prisoner exhausted available remedies, or the failure to exhaust available remedies should be excused, the case proceeds to the merits. *Id*. at 1171.

### C. CDCR Grievance Process

The CDCR has an administrative grievance system for prisoners to appeal a policy, decision, action, condition, or omission by the department or staff if it has an adverse effect on prisoner health, safety, or welfare. Prior to June 2020, the grievance process involved three levels of review. Cal. Code Regs. tit. 15, §§ 3084-85. As of June 1, 2020, prisoners are required to follow a two-level review procedure. Cal. Code Regs. tit. 15, §§ 3480-3487. Compliance with 42 U.S.C. § 1997e(a) requires California state prisoners to use CDCR's grievance process to exhaust their claims prior to filing suit in court. *See Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010); *see also Woodford*, 548 U.S. at 85-86.

## V.     EVIDENTIARY MATTERS

Plaintiff has failed to properly respond to Defendants' Statement of Undisputed Facts in support of the motion for summary judgment. Plaintiff was served with a *Rand*[3] warning that included the following language:

> In accordance with Local Rule 260(a), Defendants have filed a Statement of Undisputed Facts that contains discrete, specific material facts to support their entitlement to summary judgment. In response to this Statement, Local Rule 260(b) requires you to "reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." You may also "file a concise Statement of Disputed Facts, and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication." *Id*. You are responsible for filing all evidentiary documents cited in the opposing papers. *Id*.

(Doc. 26-2 at 2.) Plaintiff neither reproduced Defendants' itemized facts, nor admitted or denied those facts. Because Plaintiff has not complied with Rule 260(b), the Court deems Plaintiff to have admitted those facts. *See, e.g.*, *Beard v. Banks*, 548 U.S. 521, 527 (2006) ("by failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's]

---

[3] *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

7

statement."); *Brito v. Barr*, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal. July 15, 2020) (deeming defendant's undisputed facts as admitted after plaintiff failed to comply with Local Rule 260(b)); *see also Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). Here, where Plaintiff's verified complaint or evidence submitted in support of any opposition to Defendants' motion for summary judgment bring Defendants' proffered facts into dispute, the Court nonetheless considered the complaint and any evidence. *Jones*, at 923 (the court considers as evidence those parts of the verified complaint based on plaintiff's personal knowledge).

### VI.  DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

1. The incident at issue occurred at the Substance Abuse Treatment Facility and State Prison, Corcoran (SATF) on June 19, 2019, where Plaintiff was incarcerated at the time.
2. SATF keeps an electronic record of each offender's grievance.
3. When a grievance is received by SATF, it is assigned a log number and entered into a computer system.
4. The following information is kept in SATF's computer system and available in the Appeal History Report: the offender's CDCR number, the offender's name, the grievance log number, the grievance issue, the date the grievance was received, the institutional log number (which includes the acronym of the institution where the underlying grievance arose), the date the grievance is closed, and the final disposition of the grievance.
5. A search was conducted of SATF's computer system for all grievances received by SATF from Plaintiff between June 19, 2019, and March 20, 2024, in which Plaintiff alleges that Defendants Diaz, Smothermon, Velasquez, Arreazola, and Cazares used excessive force during an incident that allegedly occurred at SATF on June 19, 2019.
6. Only one such grievance was found.
7. The log number of that grievance is SATF-O-19-4172.
8. On September 12, 2019, Lieutenant Tyler attempted to interview Plaintiff about his grievance, but Plaintiff refused to be interviewed.

8

9. As a result, SATF cancelled Plaintiff's grievance pursuant to California Code of Regulations, title 15, section 3084.6(c)(8).
10. SATF informed Plaintiff about the cancellation via letter dated December 10, 2019, stating that "Your appeal has been cancelled due to your refusal to cooperate to interview with Lt. Tyler on September 12, 2019."
11. SATF's letter dated December 10, 2019, informed Plaintiff that he could submit a separate grievance on the cancellation decision.
12. There is no record of SATF receiving a separate grievance on SATF's cancellation decision from Plaintiff.
13. On September 12, 2019, SATF informed Plaintiff that the due date for SATF's response to grievance log no. SATF-O-19-4172 was extended to October 11, 2019, due to the complexity of the decision, action, or policy.
14. On October 7, 2019, SATF informed Plaintiff that the due date for SATF's response to grievance log no. SATF-O-19-4172 was extended to November 11, 2019, due to the complexity of the decision, action, or policy.
15. On November 8, 2019, SATF informed Plaintiff that the due date for SATF's response to grievance log no. SATF-O-19-4172 was extended to December 11, 2019, due to the complexity of the decision, action, or policy.
16. Since August 1, 2008, the Office of Appeals (OOA) receives, reviews, and maintains all final-level appeals for non-health care issues.
17. When an appeal is received by the OOA, it is assigned a tracking log number and entered into a computer system.
18. An "Appeals History Report" is available in the computer system for each offender. The Appeals History Report includes the following information: the offender's first and last name, the offender's CDCR number, the appeal log number, the appeal issue, the date the appeal was received, the underlying grievance log number, if any (which includes the acronym for the institution or parole region where the underlying grievance arose), the date the appeal was closed, and the final disposition of the

appeal.

19. All offender appeals received by the OOA are reviewed by the OOA and screened in or screened out.

20. Decisions by the OOA represent the final level of review in the CDCR's grievance and appeal process and are rendered on behalf of CDCR's Secretary.

21. If filing a grievance before June 1, 2020, an offender was required to follow the procedures set forth in Title 15, sections 3084-3085.

22. A search was conducted of the OOA's computer system for all appeals received by the OOA from Plaintiff between June 19, 2019, and March 20, 2024, in which Plaintiff alleged that Defendants Diaz, Smothermon, Velasquez, Arreazola, and Cazares used excessive force against Plaintiff during an incident at [SATF] on June 19, 2019.

23. The OOA found one appeal with the log number 1914311.

24. In Appeal Log No. 1914311, received by the OOA on October 28, 2019, Plaintiff requested a timely response to various allegations of staff misconduct.

25. The OOA responded with a letter dated November 18, 2019, which stated, "It has been determined that the issues contained with this [appeal] duplicate appeal SATF-19-04172 [which] has been received an[d] accepted at the institution level." Pursuant to CCR section 3084.6(c)(2) that governed Plaintiff's appeal, an appeal may be cancelled if the "appeal duplicates an inmate or parolee's previous appeal upon which a decision has been rendered or is pending." Accordingly, the OOA screened out Plaintiff's appeal pursuant to CCR 3084.6(c)(2).

(Doc. 26-1 [hereafter UDF].)

### VII. GRIEVANCES AND APPEALS DURING THE RELEVANT PERIOD

Here, the relevant period is June 19, 2019, the date of the incident giving rise to Plaintiff's claims, through March 20, 2024, the date this action was severed from 1:21-cv-01472-JLT-SKO.

*Grievance Log No. SATF-O-19-4172*

Plaintiff's grievance is signed and dated July 6, 2019. When asked to explain his issue, Plaintiff wrote:

10

> On June 19th, several officer to [deliberately] take my life. The way I was [deliberately] and [maliciously] kicked in the face and head, I thought that I was going to die. I was stomped on in the back of my head and back, I was kicked in the ribs and [stomach]. All of this while I was hand cuffed behind my back. My 8th and 14th [amendment] was broken. As these officers punched and kicked me at there free will. Calling me a "Jay Cat" "A pussy" and "Lil Bitch." One officer even yelled and said fuck June 14th referring to when they freed the slaves in Texas. I felt and still do that those officers gained pleasure out of beating me that day. I felt as though I was in an old slave movie or book I've seen and read. I fear for my life. After this incident I think that CDCR officers are going to try to kill me one day while I am in prison or put hit out on me by another inmate. I fear for my life and safety.

(Doc. 26-4 at 7, 9.) The grievance was bypassed at the first level and accepted for review at the second level on August 1, 2019. (*Id*. at 7-8.) Lieutenant N. Tyler attempted to interview Plaintiff on September 12, 2019. (*Id*. at 8.) The grievance was cancelled on December 10, 2019, because Plaintiff refused to be interviewed or cooperate with the review. (*Id*. at 3, 6, 8.)

### *Appeal Log No. 1914311*

On October 23, 2019, Plaintiff identified the subject of his appeal as "Staff Misconduct." (Doc. 26-6 at 8.) Explaining his issue, Plaintiff stated the following:

> Per California Code of Regulations 3084.9(a)(5), exceptions to the regular appeal process, if the conditions of exceptional delay exists as described in subsection 3084.8(d), the time constraint of second and third level review may be extended in increments. Per California Code of Regulations, the appellant may consider an absence of a timely response at any level, including that of any properly notices extension a denial at that level. The appellant hereby declare and state that he will like to use and except the denial at the second level. The appellant wishes that the third level looks at his medical records that he did not have before he filed his appeal. The appellant wishes that the third level grants his request for a polygraph test. It is a disgrace to the CDCR badge how the attempted murder of the appellant is being handled. This was a malicious act that [sadistically] caused serious bodily injury that is being downplayed as mere scraps. A polygraph test is the only way the appellant feels his side of the story will be recognized.

(Doc. 26-6 at 8-9 [minor modifications made to capitalization & punctuation].) On November 18, 2019, the OOA responded to Plaintiff, advising his appeal had been screened out: "Your grievance or appeal is a duplicate of a prior grievance or appeal submitted by you, and a final disposition is pending or was already rendered. See CCR Title 15, § 3084.6(c)(2)." (*Id*. at 7.)

11

1 Additionally, the OOA noted: "It has been determined that the issues contained within this CDCR 602 duplicate appeal SATF-19-04172 has been received and accepted at the institutional level." (*Id.*; *see also id.* at 3 [Inmate Appeals Tracking System Report].)

## VIII. DISCUSSION

The Court must determine whether Plaintiff exhausted his administrative remedies before filing suit alleging Eighth Amendment claims of excessive force against Defendants Cazares, Smothermon, Diaz, Velasquez, and Arreazola following the incident of June 19, 2019.[4]

### *A. Plaintiff Failed to Exhaust His Administrative Remedies*

The evidence reveals Grievance Log number SATF-O-19-04172 was cancelled at the second level when Plaintiff refused to meet with the investigating lieutenant. UDF 7-10. And despite being advised he could appeal the cancellation decision by submitting a separate grievance, Plaintiff failed to do so. UDF 11-12.

In Appeal Log Number 1914311, Plaintiff sought a response to his allegations of staff misconduct. The OOA advised him in a letter dated November 18, 2019, when the grievance was still pending, that the issue was duplicative of SATF-O-1904172," and that the appeal was screened out as duplicative pursuant to section 3084.6(c)(2) of the California Code of Regulations. UDF 22-25.

#### 1. Defendants Have Met Their Initial Burden

Based upon the foregoing, the Court finds Defendants have met their initial burden of showing there is no genuine issue of material of fact because there exists an available administrative remedy, and Plaintiff failed to exhaust his administrative remedies regarding his Eighth Amendment claims against Defendants Cazares, Smothermon, Diaz, Velasquez, and Arreazola. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387; *Albino,* 747 F.3d at 1172. Plaintiff must exhaust his claims against any defendant before filing suit. 42 U.S.C. § 1997e(a); *see also*

---

[4] Plaintiff is advised the merits of his claims are not at issue here. Defendants' motion concerns only the procedural requirement this any claims be exhausted.

12

1 *Jones*, 549 U.S. at 211; *Woodford*, 548 U.S. at 88, 93; *Rhodes*, 621 F.3d at 1005. Plaintiff did not
2 do so.

### 2. Plaintiff Has Failed to Meet His Burden of Production

Because Defendants have met their initial burden, the burden shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Plaintiff has not done so.

When Plaintiff's grievance was cancelled after he refused to meet with the interviewing lieutenant, he was advised that "[p]ursuant to CCR 3084.6(e), once an appeal has been cancelled that appeal cannot be resubmitted. *However, a separate appeal can be filed on the cancellation decision*. The original appeal may only be resubmitted if the appeal on the cancellation is granted." (Doc. 26-4 at 6, italics added.) Because Plaintiff did not file a separate appeal regarding the cancellation, his claims against Defendants Cazares, Smothermon, Diaz, Velasquez, and Arreazola are not unexhausted. *See Cortinas v. Portillo*, 754 F. App'x 525, 527 (9th Cir. 2018) ("Because [plaintiff] could have appealed his cancellation decision ... the improper cancellation of his appeal did not render administrative remedies effectively unavailable to him"); *Sekona v. Perez*, No. 1:19-cv-00400-JLT-HBK, 2025 WL 2107526, at *8 (E.D. Cal. July 28, 2025) (finding Sekona did not appeal the cancellation and thus failed to exhaust his claim and recommending summary judgment be entered for defendants), recommendation adopted, 2025 WL 2434558 (E.D. Cal. Aug. 25, 2025); *Martinez v. Lawhorn*, No. 1:21-cv-01602-JLT-CDB (PC), 2024 WL 779049, at *7 (E.D. Cal. Feb. 26, 2024) (finding "Plaintiff's failure to follow instructions to appeal a cancelled grievance does not render the administrative remedies unavailable" and recommending summary judgment be entered for defendants), recommended adopted, 2024 WL 1660805 (E.D. Cal. Apr. 17, 2024); *see also Oden v. Voong*, 2020 WL 1322943, at *12-14 (N.D. Cal. Mar. 20, 2020) (holding that failure to timely appeal a cancellation cannot satisfy the PLRA's exhaustion requirement); *Lindsey v. Tait*, 2019 WL 2867172, at *5-6 (E.D. Cal. July 3, 2019) (holding that failure to file a separate appeal to the second level review cancellation did not satisfy the PLRA's exhaustion requirement).

13

Plaintiff's claims that the exceptional delay notices[5] issued September 12, October 7, and November 8, 2019, excuse his compliance with the PLRA exhaustion requirement (*see* Doc. 33 at 6-8; UDF 13-15), lack merit. In *Washington v. Sexton*, the Court found plaintiff's claims unexhausted despite his receipt of ten "exceptional delay in review of appeal" notices during the grievance process and where plaintiff filed suit prior to any determination at the second level. *Washington v. Sexton*, No. 1:18-cv-00513-DAD-JLT (PC), 2021 WL 1784859, at *5 (E.D. Cal. May 5, 2021), recommendation adopted, 2021 WL 2534480 (E.D. Cal. June 21, 2021). As the Court noted: "While the prison officials' response was irritating to the plaintiff, a sincere desire to have the matter resolved does not justify determining that the remedy was unavailable. '[I]f there is a process available, it must be utilized, regardless of how tiresome or trying.'" *Id.*, at *6 (citation omitted).[6]

To the extent Plaintiff contends the OOA's characterization of his appeal as duplicative of his grievance was "unorthodox," the Court is not persuaded. A review of the substance of Plaintiff's appeal reveals it concerned his earlier grievance. (*Cf.* Doc. 26-4 at 7, 9 [grievance] to Docs. 26-6 at 9 [appeal] & Doc. 33 at 13 [same].) The Court agrees appeal log number 1914311 was duplicative of grievance log number SATF-O-19-04172, and did not serve to exhaust Plaintiff's administrative remedies. Although a decision had not yet been rendered, Plaintiff was aware a response was forthcoming given the three notices he received extending the deadline for

---

[5] *See Fordley v. Lizarraga*, 18 F.4th 344, 352, n.5 (9th Cir. 2021) ("The regulations allowed the prison more time to respond to non-emergency grievances, if the prison notified the inmate of the reason extra time was needed and the inmate was given a new estimated response date. Cal. Code Regs. tit. 15, § 3084.8(d), (e)"). The notices issued to Plaintiff each state the time was extended due to "[c]omplexity of the decision, action, or policy." (Doc. 33 at 6-8; *see also* UDF 13-15.)

[6] *See also Ardds v. Hicks*, No. 1:19-cv-01738-SAB (PC), 2021 WL 3471595, at *6 (E.D. Cal. Aug. 6, 2021) (granting summary judgment and stating "to the extent Plaintiff contends that the delay in issuing and receiving the second level response thwarted his exhaustion efforts, such claim is without merit. Plaintiff could not have reasonably believed prison authorities would not respond to his appeal. It is undisputed that while his appeal was pending, he was informed in writing four separate times that there would a delay in responding to his appeal. … Prison officials need not strictly adhere to the time limits for response to an administrative grievance as long as the prisoner is given an explanation, as was done here"); *Williams v. Navarro*, No. 1:18-cv-00611-JLT-BAM, 2024 WL 645132, at *7 (E.D. Cal. Feb. 15, 2024) (recommending summary judgment for defendants and finding plaintiff failed to offer evidence demonstrating the delay rendered the appeals process unavailable), recommendation adopted, 2024 WL 1179013 (E.D. Cal. Mar. 19, 2024).

14

a determination. *See Ardds*, 2021 WL 3471595, at *6. Further, the fact Plaintiff did not believe his grievance was complex (*see* Doc. 33 at 3 ["I felt like how is it complex that I was kicked in my head and face …"]) does not excuse Plaintiff's attempt to circumvent the grievance process by filing a duplicate appeal or bypassing the institutional levels. *Washington*, 2021 WL 1784859, at *6.

Next, to the extent Plaintiff contends his appeal to the OOA was "different" (*see* Doc. 33 at 4) from his grievance, and the OOA's letter dated November 18, 2019, amounts to exhaustion at the third and final level of the process, his assertion not comprehensible. If grievance log number SATF-O-19-04172 and appeal log number 1914311 were truly "different," then Plaintiff's submission of an appeal directly to the OOA, without submitting any other relevant grievance at the first or second level, improperly bypassed the institutional levels. *See* Cal. Code Regs. tit. 15, §§ 3084-85; *see also* Doc. 26 at 10-11 & UDF 20-21.)

Finally, to the extent Plaintiff contends his anxiety, depression, and "serious mood disorder" (*see* Doc. 33 at 1), involve special circumstances that excuse any failure to exhaust, the Court does not agree. The Supreme Court has expressly held that a "special circumstances" exception is inconsistent with the text and history of the PLRA. *Ross*, 578 U.S. at 638-39. The PLRA requires exhaustion of available administrative remedies; availability is the only qualifier. *Id*. at 639. Courts may not exercise discretion to recognize exceptions to mandatory exhaustion. *Id*. at 639, 641; *see, e.g*., *Holguin v. Bell*, No. 1:19-cv-00757-HBK, 2021 WL 5867420, at *8 (E.D. Cal. Dec. 10, 2021) (finding no discretion to excuse exhaustion for a "mental health "condition"); *Ruiz v. Sadler*, 2021 WL 106572, *2 (E.D. Cal. 2021) (finding no discretion to excuse exhaustion when plaintiff alleged limited English proficiency). Therefore, Plaintiff's mental health status does not justify his failure to exhaust administrative remedies.

### B. Summary of Findings

In sum, Plaintiff fails to meet his burden by demonstrating administrative remedies were unavailable to him. Plaintiff has not submitted evidence to show the grievance procedure operated as a simple dead end or could not be used, or that prison officials thwarted his attempts to use the grievance process through machination, misrepresentation, or intimidation. *Ross*, 578 U.S. at 643-

44; *Sapp*, 623 F.3d at 823-24. Simply put, Plaintiff has failed to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino,* 747 F.3d at 1172. Defendants are entitled to summary judgment based upon Plaintiff's failure to exhaust his administrative remedies prior to filing suit.

## V. CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court **HEREBY RECOMMENDS** that:

1. Defendants' motion for summary judgment regarding exhaustion (Doc. 26) be **GRANTED**;
2. This action be **DISMISSED**, without prejudice, for failure to exhaust administrative remedies; and
3. The Clerk of the Court be **DIRECTED** to enter judgment accordingly and to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed fifteen (15) pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time

//
//
//
//

1  may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **September 24, 2025**                    /s/ *Sheila K. Oberto*                    
                                         UNITED STATES MAGISTRATE JUDGE